# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEANNIE MCIVER,<br><br>*Plaintiff*,<br><br>v.<br><br>JIM MATTIS, Secretary, United States Department of Defense,<br><br>*Defendant*. | Civil Action No. 16-1448 (DLF) |

## MEMORANDUM OPINION

Jeannie McIver brings claims against the U.S. Department of Defense under Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act. Before the Court is Defense Secretary Jim Mattis's Motion for Partial Dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] Dkt. 20. For the reasons that follow, the Court will grant the motion in part and deny it in part.

## I. BACKGROUND

McIver categorizes her factual allegations and counts into two classes: those related to her employment with the Pentagon Force Protection Agency and those related to her employment with the Navy Yard. Both are agencies within the Department of Defense. The Court will recount the facts described in the amended complaint, though it is at times difficult to follow.

---

[1] Ashton B. Carter was Defense Secretary when McIver filed her complaint, but Jim Mattis has since taken that position and is automatically substituted as the defendant in this case under Rule 25(d) of the Federal Rules of Civil Procedure.

In early 2014, McIver became a police officer recruit with the Pentagon Force Protection Agency. Am. Compl. ¶ 14, Dkt. 18. One of McIver's supervisors, Erik McVicker, told her that she would need to attend a training program in July 2014. *Id.* ¶ 18. In June, however, McIver informed her superiors that she would be unable to attend the training because she needed to care for her disabled mother. *Id.* ¶¶ 20–25. She submitted a request for an alternative work schedule, but it was denied. *Id.* ¶ 22–23. The complaint states that McIver then "invoked her [Family and Medical Leave Act] rights" to seek another accommodation. *Id.* ¶ 23. When McVicker ordered McIver to attend the training program, McIver responded that she could not because she needed to care for her mother. *Id.* ¶ 25. McVicker then submitted McIver's accommodation request and asked her to resign. *Id.* ¶ 26. McIver was subsequently placed on AWOL status and McVicker stated that he would remove her from federal service if she did not attend the training. *Id.* ¶ 27–28. McIver alleges that a white male who was hired as a police officer recruit with her did not have to attend the training. *Id.* ¶¶ 38–41.

Around July 20, 2014, McIver underwent emergency surgery for a ruptured ulcer. *Id.* ¶ 29. She subsequently requested an accommodation for light-duty work, but on August 28, McVicker instead began to remove her as an officer recruit. *Id.* ¶ 32. McIver alleges that she was never accommodated and instead had to use excessive amounts of leave time from July 2014 to January 2015. *Id.* ¶ 33. On August 29, 2014, McIver filed an Equal Employment Opportunity (EEO) complaint for race and sex discrimination. *Id.* ¶ 34; Dkt. 25-6 at 2.

In March 2015, one of McIver's supervisors placed her on AWOL status on the grounds that she had used excessive medical leave and was negatively impacting employee morale. *Id.* ¶¶ 35–36. In April 2015, McIver sought accommodation for an "alternate course of action." *Id.*

¶ 37. This was denied in May 2015. *Id.* McIver filed another EEO charge against the Pentagon Force Protection Agency, this time for retaliation, on July 20, 2015. Dkt. 25-11.

Around June 2015, the Navy Yard hired McIver as a police officer. *Id.* ¶ 44. Because of her ruptured ulcer, however, McIver's capabilities were limited. *Id.* ¶ 45. On September 21, she gave her supervisor a medical letter indicating that her protective gear was causing complications and requested to work without the gear. *Id.* ¶¶ 47–48. Her supervisors denied the request the next day and informed her that she was relieved of "duty status." *Id.* ¶ 48. On September 24, one of the supervisors rejected her requests for a light-duty status. *Id.* ¶¶ 50–51. On October 1, McIver requested a different holster and presented another medical letter, but her request was denied the next day. *Id.* ¶ 52. McIver alleges that a similarly situated employee was allowed to work without protective gear or a holster. *Id.* ¶ 53. McIver filed another EEO complaint, this time against the Navy Yard for sex and disability discrimination, on March 7, 2016. *Id.* ¶ 54; Dkt. 20-12 at 8–10.

McIver sued the Secretary in July 2016. In February 2017, following an initial round of briefing on the Secretary's motion for partial summary judgment on the pleadings under Rule 12(c), McIver filed an amended complaint. Dkt. 18. Thereafter, the Secretary filed the instant motion. The case was reassigned to the undersigned judge on December 5, 2017.

## II. LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal law empowers federal district courts to hear only certain kinds of cases, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins.*, 511 U.S. 375, 377 (1994). When deciding a Rule 12(b)(1) motion, the court must "assume the truth of all material

3

factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine [the] jurisdictional questions." *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted). But the court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" in order to "assure itself of its own subject matter jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (internal quotation marks omitted). A court that lacks jurisdiction must dismiss the action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

Rule 12(b)(6), meanwhile, allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Id.* (internal quotation marks omitted). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. When deciding a Rule 12(b)(6) motion, the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials. *EEOC v. St.*

4

*Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A Rule 12(b)(6) dismissal "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

## III. ANALYSIS

McIver asserts six counts in total. Am. Compl. ¶¶ 55–72. Two are Title VII claims, and the Secretary does not seek to dismiss those. The other four are Rehabilitation Act claims. Two of the Rehabilitation Act claims allege that the Pentagon Force Protection Agency discriminated against her on the basis of disability. One alleges that Pentagon Force Protection Agency unlawfully retaliated against her. And the other alleges that the Navy Yard discriminated against her on the basis of disability. The Secretary moves to dismiss the Rehabilitation Act counts related to the Pentagon Force Protection Agency and moves for partial dismissal of the Rehabilitation Act count related to the Navy Yard. Sec'y Mem. at 1–2, Dkt. 20-1. For each of these counts, the Secretary's challenge rests at least in part on the argument that McIver failed to adequately exhaust administrative remedies.

The Rehabilitation Act requires a person alleging a violation to exhaust administrative remedies by filing an administrative charge before bringing a civil suit. 29 U.S.C. § 794a(a)(1); *see also Crawford v. Duke*, 867 F.3d 103, 105 (D.C. Cir. 2017) (describing the process by which a federal employee exhausts administrative remedies). This exhaustion requirement "serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation marks and alteration omitted).

The "usual practice" under the Federal Rules of Civil Procedure "is to regard exhaustion as an affirmative defense" that need not be pleaded by the plaintiff. *Jones v. Bock*, 549 U.S. 199,

212 (2007); *see also Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) ("Because untimely exhaustion of administrative remedies is an affirmative defense [in the Title VII context], the defendant bears the burden of pleading and proving it."). But for Rehabilitation Act claims, a plaintiff's failure to file an administrative complaint—and thus to exhaust—precludes jurisdiction, *Doak v. Johnson*, 798 F.3d 1096, 1103 (D.C. Cir. 2015), and "the party asserting federal jurisdiction when it is challenged has the burden of establishing it," *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). In determining whether it has jurisdiction, a court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint." *Settles*, 429 F.3d at 1107 (internal quotation marks omitted). Even for aspects of exhaustion that are not jurisdictional—such as the plaintiff's failure to comply with administrative time limits, *Doak*, 798 F.3d at 1104—a defendant may raise exhaustion as an affirmative defense in a motion to dismiss "when the facts that give rise to the defense are clear from the face of the complaint." *Smith–Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998).

Here, the facts relevant to exhaustion are undisputed and are clear from McIver's EEO documents, which are judicially noticeable public records. *See* Dkt. 20-12; Dkt. 25-6; Dkt. 25-12; *Bowden*, 106 F.3d at 437 (considering "the pleadings and undisputed documents in the record" while reaching the merits on a motion to dismiss); *Vasser v. McDonald*, 228 F. Supp. 3d 1, 10 (D.D.C. 2016) ("[C]ourts have taken judicial notice of Final Agency Decisions, especially for background information such as dates of filings."); *Williams v. Chu*, 641 F. Supp. 2d 31, 35 (D.D.C. 2009) ("A plaintiff's EEOC charge and the agency's determination are both public records, of which this Court may take judicial notice." (quotation marks and alteration omitted)).

6

McIver failed to adequately exhaust administrative remedies with respect to her disability claims against the Pentagon Force Protection Agency because she provided no notice of any disability claim in her administrative charge. On August 29, 2014, McIver filled out a standard EEO charge form, which directs the complainant to check boxes corresponding to his or her alleged form(s) of discrimination (race, religion, etc.) and also asks the complainant to describe the specific details of the charge in the complainant's own words. *See* Dkt. 25-6 at 2. McIver checked boxes corresponding to "race" and "sex" but left unchecked the box corresponding to "disability." *Id.* In the details section, moreover, McIver provided no information that could be read to "express or even hint" at a disability claim, *Park*, 71 F.3d at 907, and instead complained that she was required to attend training and that her request for a Family Medical Leave Act accommodation was denied, *id.*; *see also* McIver Opp'n at 16, Dkt. 24.

That raises the question whether failure to exhaust precludes jurisdiction or is instead a merits defect when the plaintiff filed a charge with the appropriate agency but did not provide notice of the particular claim later pursued in court. A plaintiff's "wholesale failure to file an administrative complaint or to obtain any administrative decision at all" precludes jurisdiction. *Doak*, 798 F.3d at 1103 (citing *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006)). On the other hand, "issues concerning how a claimant participates in [the] administrative process"—for example, compliance with time limits created by regulation—"are not of jurisdictional moment." *Id.* at 1104. The Court concludes that a failure to provide notice of a particular claim is no different—as far as that claim goes—than a wholesale failure to file. *See Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) ("Allowing a complaint to encompass allegations outside the ambit of the predicate [administrative] charge would circumvent the [appropriate agency's] investigatory and conciliatory role, as well as deprive the charged party of

7

notice of the charge, as surely as would an initial failure to file a timely [administrative] charge."). The Court will therefore dismiss McIver's claims alleging disability discrimination against the Pentagon Force Protection Agency for lack of jurisdiction.

As for the retaliation claim, however, McIver did check the box corresponding to "reprisal for previous EEO activity" in her second EEO charge filed against the Pentagon Force Protection Agency on July 20, 2015. *See* Dkt. 25-11 at 2. (As in the first charge, McIver left the disability box unchecked and the details section contained nothing to indicate a disability claim.) In the details section, McIver noted that she had been denied requests for accommodation in May and June 2015. *Id.* To the extent McIver's current allegations "grow[] out of" and are "reasonably related to" these denied requests, *Park*, 71 F.3d at 907 (quotation marks omitted), they are adequately exhausted.

On the merits, an employee claiming retaliation must ultimately prove "(1) that [the] employee engaged in statutorily protected activity; (2) that the employee suffered a materially adverse action by the employee's employer; and (3) that a causal link connects the two." *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Library of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013). "To survive [a] motion to dismiss, [a] complaint must contain sufficient factual matter, accepted as true, to plausibly establish those three elements." *Id.* (internal quotation marks omitted).

The Secretary challenges the claim only on the first element, arguing that McIver fails to allege activity protected by the Rehabilitation Act. *See* Sec'y Mem. at 18–19. The Rehabilitation Act incorporates the antiretaliation provision of the Americans with Disabilities Act, *see* 29 U.S.C. § 791(f); *Solomon v. Vilsack*, 628 F.3d 555, 559–60 (D.C. Cir. 2010); *Jarvis v. Potter*, 500 F.3d 1113, 1125 (10th Cir. 2007), which protects an employee from discrimination

8

on the ground that the employee has "opposed any act or practice made unlawful by [the statute] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the statute]," 42 U.S.C. § 12203. The Rehabilitation Act "governs employee claims of handicap discrimination against the Federal Government," and "[i]ts basic tenet is that the Government must take reasonable affirmative steps to accommodate the handicapped, except where undue hardship would result." *Barth v. Gelb*, 2 F.3d 1180, 1183 (D.C. Cir. 1993).

McIver argues that she engaged in statutorily protected activity by requesting reasonable accommodations on June 10, July 7, July 9, July 10, and August 28, 2014, and April 8, 2015. McIver Opp'n at 9 (citing Compl. ¶¶ 20–22, 32, 37). "The act of requesting in good faith a reasonable accommodation is a protected activity under . . . Rehabilitation Act." *Vilsack*, 763 F.3d at 15. The June and July 2014 requests for accommodation cannot form the basis for a Rehabilitation Act retaliation claim because they occurred before McIver's surgery and were requests to care for her mother, which the Rehabilitation Act does not protect.

The August 2014 and April 2015 requests, however, do seem to have involved McIver's alleged disability. *See* Compl. ¶¶ 30, 32 (alleging that after being cleared for light-duty work after her surgery, "McIver . . . sought accommodation for light duty work" and that "[o]n August 28, 2014, McVicker ignored the request"); *id.* ¶ 37 ("On April 8, 2015, McIver again requested for reasonable accommodation or for 'an alternate course of action' as requested by Smith. On May 8, 2015, Smith denied McIver's request to be placed in an alternate position until she could find other employment, for permanent light duty status."). The complaint's description of the April 2015 request is unclear, but the Secretary provides no record citation suggesting that either the August 2014 or April 2015 request did not involve McIver's disability. *See generally* Sec'y

Mem. at 18–19.  The retaliation count survives, therefore, insofar as (1) it alleges retaliation against McIver for her August 2014 and April 2015 requests for accommodation; and (2) the denial of McIver's May and June 2015 requests form the basis of the adverse action or are reasonably related to the retaliation.

That leaves McIver's claim of discrimination against the Navy Yard.  *See* Dkt. 20-12 at 8–10 (McIver filing a formal administrative complaint against the Navy Yard for sex and disability discrimination); Compl. ¶¶ 70–72 (alleging that the Navy Yard unlawfully denied McIver a reasonable accommodation).  The Secretary moves to partially dismiss this count for failure to exhaust.  Federal regulation provides that "[a]ggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter."  29 C.F.R. § 1614.105(a).  The aggrieved person must initiate this consultation "within 45 days of the date of the matter alleged to be discriminatory."  *Id.* § 1614.105(a)(1); *see also Doak*, 798 F.3d at 1099.  McIver first contacted a counselor about the Navy Yard on November 10, 2015.  *See* Dkt. 20-12 at 14.  The Secretary argues that McIver's the Navy Yard count should be limited to allegations occurring on or after September 25, 2015, which is forty-six days prior.  *See* Sec'y Mem. at 23.

The Secretary's argument is correct.  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  The Court will accordingly limit the Navy Yard count to allegations of events occurring no more than forty-five days before November 10, 2015.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Secretary's Motion for Partial Dismiss. Dkt. 20. Specifically, Counts 1 and 5 against the Pentagon Force Protection Agency (disability discrimination under the Rehabilitation Act) are dismissed for lack of jurisdiction. *See* Fed. R. Civ. P. 12(b)(1), 12(h)(3). Count 2 against the Pentagon Force Protection Agency (retaliation under the Rehabilitation Act) survives insofar as (1) it alleges retaliation against McIver for her August 2014 and April 2015 requests for accommodation; and (2) the denial of McIver's May and June 2015 requests form the basis of that retaliation or are reasonably related to the retaliation. The count against the Navy Yard (disability discrimination under the Rehabilitation Act) is limited to allegations of events occurring no more than forty-five days before November 10, 2015. The other counts survive in full. A separate order consistent with this decision accompanies this memorandum opinion.

*[signature]*
DABNEY L. FRIEDRICH
United States District Judge

Date: July 24, 2018